**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN  DIVISION**

**FRANK ADAM SEIGFRIED, #L2329**                                **PETITIONER**

**VERSUS**                                **CIVIL ACTION NO.  1:05-CV-370-DMR-JMR**

**LAWRENCE GREER**                                **RESPONDENT**

## ORDER DISMISSING PETITION WITH PREJUDICE

**BEFORE** THE COURT is the Petition of Frank Adam Seigfried, #L2329, seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.  And the Court, having carefully considered the record before it, and the applicable case law, is of the opinion that the grounds sought in the petition are not well taken and it should be dismissed on all grounds with prejudice

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Petitioner is lawfully in the custody of  Dale Caskey, Warden of the East Mississippi Correctional Facility at Meridian, Mississippi, after being convicted of after being convicted of one (1) count of sexual battery in the Second Judicial District of the Circuit Court of Harrison County, Mississippi.  The Petitioner was sentenced to serve a term of twenty (20) years in the custody of the Mississippi Department of Corrections.  *See* State Court Clerk's Papers (hereinafter "C.P."), p. 35.

Thereafter, the Petitioner appealed his judgment of conviction and sentence to the Mississippi Supreme Court, assigning as error the following (as stated by petitioner):

    A.    The verdict was contrary to the law and evidence and/or against the overwhelming weight of the evidence as to consent.  The court erred in not granting a directed verdict or preemptory instruction since the state failed to prove consent.

    B.    The Court erred in refusing and not allowing the jury instructions, D-7 on consent and D-4 on a lesser included offense of simple assault.  The Court erred in granting S-1which although a correct statement of the elements failed to show consent as a separate element.

C.      The court erred in allowing the video receipt into evidence.

D.      The cumulative effect of the errors deprived Seigfried of a fair trial.

On October 21, 2003, the Mississippi Court of Appeals affirmed petitioner's judgment of conviction and sentence in a written opinion. *See* Exhibit A. *Seigfried v. State*, 869 So. 2d 1040(Miss. App. 2003)(Cause No. 2002-KA-01488-COA).

On April 11, 2005, Seigfried filed an "Application for leave to Proceed in the Trial Court" and a "Motion for Post Conviction Collateral Relief" in the Mississippi Supreme Court in which he raised the following issues (as stated by petitioner with the exception of "A" which is summarized as submitted by the respondent and included herein):[1]

A.      Petitioner was denied his right to a fair and just appeal by the appellate court's refusal to recognize Seigfried's termination of appellate counsel, Jim Davis, thereby preventing petitioner from meaningful participation in his own appeal.  Further, because Seigfried terminated his appellate counsel, the court of appeals was without jurisdiction to review the claims raised by Jim Davis.

B.      Ineffective assistance, misrepresentation, and/or no notification or representation of defense counsel and/or the Petitioner to participate in all critical phases/proceedings/hearings/conferences (including discovery) in pre-trial, trial, and post-trial.

C.      The petitioner was improperly charged with violating/ the violation of § 97-3-95©) Miss Code as amended, making the official citation of the statute on the face of the indictment fatally defective.

D.      The twenty (20) year sentence for sexual battery is unconstitutional because the jury (due to professional misconduct/other) was not permitted to consider a verdict of guilty of the "known lesser included offense of fondling child."

---

[1]Respondent has noted for the Court that the state courts and the petitioner reference the victim by his initial's , "J.M.", and the minor eyewitness by his initials, "B.V.".  In keeping with the state courts' intent to protect the privacy of the minors that are central to this case, the Court and respondent have also referenced the victim and eyewitness by their initials herein.

E.   Jury Instruction S-1 did not contain the correct statement of law, and was not warrented by the evidence.

F.   The petitioner was fatally prejudiced by the State's Exhit #2 and trial court erred in it's discretion by allowing it to be seen by the jury and introduced as evidence at trial.

G.   Conviction was not warrented by the evidence and/or lack of credible and trustworthy of the state's witnesses J.M., B.V., and Inv. Earl Grimes in their trial testimony.

H.   The State withheld discovery disclosure, evidence and police statements prior to trial, during trial, and in post trial proceedings.

I.   Notable lies, false/altered police records/statements, perjury by the state's witnesses J.M., B.V., Inv. Earl Grimes, obstruction of justice and illegal cohersion/coaching (of minors/police, to make false/misleading/perjured statements and trial testimony).

J.   New evidence discovered/made known to the petitioner after trial; which the petitioner believes had this evidence been known and introduced into the record, the outcome of the trial/finding of guilty, would have been different had the jury seen, heard, and had the evidence/testimony to consider/weigh during trial, and the appellate court been able to review before the petitions relief was denied.

K.   Search warrent and subpoena of petitioner's residence and privileged business transactions were unconstitutionally acquired, served, and/or conducted, and not warrented by the affidavits and underlying facts written and sworn to by BPD Inv. Paul Cannette, Earl Grimes, (other unknown.

L.   Notable/documented conflict of interest between paid/appointed defense counsel and the petitioner during pre-trial, trial, and post-trial proceedings which denied petitioner of a just and fair trial.

M.   Failure of the state to appoint effective assistance of counsel during post-trial proceedings.

N.   Prosecution, defense counsel, and trial/appellate court error(s), misconducts, acts/omissions, denied/deprive of constitutional/civil rights/rules of MS/Fed rules of court violations, and mis-statement of facts, issues, and misrepresentation of those facts/issues/evidence which

3

petitioner asserts denied him of a constitutionally fair and just trial/appeal to his prejudice.

O.    The state/defense counsel/courts, failed/deprived the petitioner of his rights and tainted the integrity of the law and those rights. [See application for laundry list of rights allegedly violated].

P.    The state violated the lower court's order suppressing any testimony referencing prior crimes or other alleged sexual misconduct.

Q.    Other issues/grounds/claims as mentioned through-out and within this Motion for Post-Conviction as may be indicated. [The following issues are set out in the body of petitioner's motion and respondent's submit represent the "other" issues referenced by petitioner.]

(1)    Counsel was ineffective for his failure to plead Seigfried's innocence instead of alleging the act was committed with consent.

(2)    The state, as well as defense counsel, was derelict of their sworn oaths and duty, incompetent, and/or bias in failing to assure Seigfried his rights pursuant the Mississippi and U.S. Constitution and the Mississippi Rules of Court. [2]

(3)    Counsel was ineffective before trial, at trial, and on appeal for his failure to investigate and request a competency hearing inspite of Seigfried's pleads and demonstrations that he was not competent to stand trial and assist in his defense.

(4)    Counsel was grossly negligent and ineffective failing to object to state's exhibit #2 being entered into evidence and failing to question Inv. Earl Grimes' perjury.

The supreme court dismissed the application without prejudice in an "Order" filed May 24, 2005,

stating in pertinent part, as follows:

Seigfried states in his application that he is presently suffering from mental and other disabilities and he seeks an opportunity to amend his application when he is

---

[2]Within this claim, Seigfried espouses five (5) enumerated acts or omissions on the part of defense counsel and the court.

no longer suffering from those disabilities. The panel finds that petitioners are allowed a single post-conviction collateral relief petition, subject to limited exceptions. Miss. Code Ann. § 99-39-27(9). The panel, therefore, finds that the present application should be dismissed without prejudice. If Seigfried chooses to seek post-conviction relief, he should do so within the limitations period and his application should contain all claims Seigfried chooses to raise.

*See* Cause No. 2005 - M -0731.

On June 9, 2005, Seigfried filed a "Petition for Rehearing on Petitioner's Application for Leave to Proceed in Trial Court" in the Mississippi Supreme Court in which he incorporated all of the issues previously raised in his first post-conviction petition. Petitioner also raised the following additional issues (as stated by the Petitioner):

A.    The trial court errored in allowing State Exhibit #1 from being entered into evidence.

B.    The trial court errored in allowing state's exhibit #2 into evidence.

C.    The court errored in its discretion by not granting a mistrial when requested due to Jeremy Moore crying on the witness stand during his testimony, and defense counsel was ineffective as counsel for refusing to allow a witness to testify that he seen both Jeremy Moore and Brandon Vargas laughing and joking about their testimony immediately after exiting the court room.

D.    Prosecution Misconduct for withholding evidence from discovery disclosure *i.e.*, state's exhibit #2 and the tape recorded statement of the victim that was alleged to have been taken by Inv. Earl Grimes during his initial investigation on/about 13 Nov 2000.

E.    Prosecution misconduct by falsely stating and referring to a 20 yr past alleged prior alligation for which the petitioner was never charged.

F.    The trial court errored in giving legal advise and criminally cohersing the petitioner (with threats) concerning the petitioner calling witness(s) (police officers) so that they could testify to initial police reports, which contradicted trial testimony of the state's witnesses.

5

G.     The petitioner's 4th amendment rights were violated by police obtaining search warrants under false pretences and from locations that were different than that which was initially reported & sworn to in Inv. Cannette's affidavit dated on about 11 Nov. 2000.

H.     The evidence was contrary to the evidence because the state's witnesses('s) gave contradicting testimonies and testimonies which were contradictory to all prior police documentation.

I.     Prosecution misconducts for falsely stating that the alleged video's in state's Exhibit #1 contained homosexual activity which was contrary to the evidence and prior police statements made during the initial investigation, (i.e. Nov. 11 2000 - 13 Nov. 2000, affidavit for search by officer Cannette).

J.     Counsel was ineffective as counsel for not objecting to and/or giving a reasonably expected defense to the previously numbered items/issues. Items 1) thru item 9.

K.     Trial Counsel was ineffective as counsel for not being prepared for trial and for not calling witnesses and introducing physical evidence that was favorable to the petitioner.

L.     Trial court errored and defense counsel was ineffective when the petitioner was brought from being specially housed in a suicide cell, was suffering from psyciatric medication (prescribed by VA) withdrawal, was not permitted to have any communication, see a psyciatric medications for the 8 days prior to the JNOV hearing and was unable to assist in his defense.

M.     Trial court errored when the court allowed terminated paid counsel to petition the court and was appointed counsel on appeal: when the petitioner never requested counsel, later sent notifications of the termination, stated he had chosen to act pro se during his appellate process, and the trial court was made aware of the serious conflict of interest that existed between the petitioner and terminated paid prior counsel.

N.     The trial court was without jurisdiction to rule on counsels motion to withdraw as counsel on appeal when the petitioner appeal had already been perfected and was in the jurisdiction of the MS State Supreme Court.

O.     Other issues which the petitioner discovers once he is allowed to review the true trial transcript/record and is permitted discovery/further discovery.

6

P.      It was grossly erronious and prejudicial on the part of the Grand Jury, the discretion of the court, further aggravate by the deceptive misconduct of/between the state and the ineffective assistance of defense counsel:  for allowing "Consent" to be a major element in the state's prosecution joined by the defense stratigy of counsel, while knowing that moral law and state statue could never legally/morally allower a minor under the age of 16 years of age to consent to having any sexual experience with/without concent. [. . .]

The supreme court granted the motion for rehearing but denied petitioner's application in an

"Order" filed July 6, 2005, stating in pertinent part, as follows:

By Order entered on May 24, 2005, this Court dismissed Seigfried's pro se application for post-conviction collateral relief, without prejudice.  In the present motion, Seigfried requests that this Court reconsider that decision and rule on the merits of his application for post-conviction relief.  After due consideration, the panel finds that the motion for reconsideration should be granted and the panel will rule on the merits of Seigfried's application for post-conviction relief.

After due consideration of the application, the panel finds that Seigfried's claim that the trial court, the Mississippi Court of Appeals, and this Court lack jurisdiction in this matter is without merit.  The panel finds that Seigfried's claims that he received constitutionally ineffective assistance of counsel fail to meet both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984).  The panel further finds that Seigfried's claims that the indictment was defective, that the jury was not properly instructed, that the conviction was not supported by the evidence, and that the State misrepresented facts concerning an exhibit are procedurally barred.  Miss. Code Ann. § 99-39-21(3).  The panel finds that Seigfried's claims that the admission of an exhibit was prejudicial, that the State presented false or perjured testimony, and that the trial court erred in allowing evidence of other bad acts are procedurally barred.  Miss. Code Ann. § 99-39-21(1).  The panel further finds that Seigfried's claims that the State withheld discovery, that the search and seizure of his property was unconstitutional, and that his conviction and sentence violate his rights are without merit.  The panel finds that Seigfried's claim that he has newly discovered evidence is without merit.  That evidence was reasonably discoverable at the time of trial and the evidence is not of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence.  The panel further finds that Seigfried has failed to make a substantial showing of the denial of a state or federal right as required by Miss. Code § 99-39-27(5).  Accordingly, Seigfried's application for post-conviction collateral relief should be denied.

*See* Cause No. 2005 - M - 0731.

7

On August 4, 2005, Seigfried filed the instant petition in this Court.  On January 20, 2006, Seigfried filed an amended petition.  The total number of pages for both petitions is quite large and , as stated by the Respondent in his Response, consist of "a rambling conglomeration of claims and arguments that he [Petitioner] has pieced together from his various filings in state court."  The undersigned has carefully reviewed both petitions in an attempt to uncover the many claims that petitioner seeks to present to this court for habeas relief.[3]  Thus, liberally construing petitioner's pleadings, respondent submits, and this Court agrees, that the following represents the grounds raised in the instant petition and amended petition for habeas relief:[4]

> Ground One: Seigfried was improperly charged with a violation of § 97-3-95© Miss. Code as amended, making the official citation of the statute on the face of the indictment fatally defective.

> Ground Two: Jury Instruction S-1 did not contain the correct statement of law and was not warranted by the evidence.

> Ground Three: The twenty (20) year sentence for sexual battery is unconstitutional because the jury was not permitted to consider the lesser included offense of fondling a child.

> Ground Four: The prosecution ambushed petitioner by prosecuting him in cause number B2402-2001-087 when the prosecution had led him to believe that the first charge that would be prosecuted was cause number B2402-2001-086, thereby depriving Seigfried of a fair trial.

> Ground Five: The court erred in admitting the video rental receipt (State's Exhibit #1) into evidence thereby violating Mississippi Rules of Evidence 401 and 901 as well as petitioner's Fourth and Fourteenth Amendment Rights.

---

[3]Respondent submits that many of the enumerated claims, if liberally construed, actually consist of numerous subclaims.

[4]As respondent has submitted to the Court, there are claims within the Petitioner's claims, the enumerated grounds herein address the Petitioner's claims but do not correlate with the Petitioner's original numbering scheme; rather, categories of claims are addressed herein.

Ground Six: The court erred in admitting into evidence the photograph of J.M. taken by Investigator Earl Grimes (State's Exhibit #2) without requiring that the photograph be properly authenticated and which was not disclosed by the prosecution in discovery.

Ground Seven: Violation of Seigfried's right to a speedy trial.

Ground Eight: Seigfried's arrest and the search warrant authorizing the search of Seigfried's house were both unlawful because the underlying facts and circumstances that served as the basis for the arrest and for obtaining the warrant were lies.

Ground Nine: The verdict was against the overwhelming weight of the evidence.

Ground Ten:  Seigfried's *Miranda* rights and First Amendment rights were violated by Officer Cannette's refusal to allow petitioner to give a statement  with counsel present to advise petitioner of his rights.

Ground Eleven: Law enforcement committed perjury, forgery and tampered with evidence in an attempt to cover up the fact that there was no credible evidence to constitute probable cause for Seigfried's arrest.

Ground Twelve: Malicious prosecution.

Ground Thirteen: Prosecutorial misconduct:

  A.    References to videos as homosexual in nature was not
         supported by the evidence and extremely prejudicial.
  B.    Failure to disclose J.M.'s tape recorded statement prior to
         trial.
  C.    Intentionally withheld the identity of J.M. until the
         afternoon of trial.

Ground Fourteen: The trial court erred in denying Seigfried's motion for mistrial after J.M. became emotional while testifying.

Ground Fifteen: The supreme court erred in denying Seigfried's post-conviction petition and his request for an evidentiary hearing.

Ground Sixteen:   The trial court erred in giving unsolicited legal advice regarding whether Officer Pigoga should testify for the defense.

Ground Seventeen:  The trial court erred in permitting the state to present testimony and make statements concerning other crimes.

Ground Eighteen:  The trial court erred in failing to give a limiting instruction concerning other crimes.

Ground Nineteen: Seigfried was denied his Sixth Amendment right to self-representation at trial and on appeal due to the failure of both the trial court and appellate court to permit the termination of counsel by Seigfried.

Ground Twenty: New evidence:

  A. Forgery by Investigator Earl Grimes.
  B. Information from an eyewitness involving the theft of petitioner's car by J.M.

Ground Twenty-One:  Ineffective assistance of trial counsel:

  A. Trial counsel failed to protect petitioner's right to a speedy trial by causing needless delays.

  B. Trial counsel failed to strike biased jurors, failed to seek a change of venue due to adverse pretrial publicity, and  sent Seigfried out of the courtroom during voir dire.

  C. Trial counsel allowed the prosecution to ambush Seigfried by going forward on cause number B2402-2001-087 instead of cause number B2402-2001-086 and by presenting evidence that had not been properly disclosed to the defense.

  D. Trial counsel failed to request a competency hearing.

  E. Trial counsel failed to request jury instructions that were applicable to the facts of the case.

  F. Trial counsel failed to communicate with petitioner and provide adequate legal guidance. [including lying to petitioner about both boys testifying, advising

10

petitioner that he would have to give up his right not to testify if he wanted counsel to put Alden Shank and other witnesses on the stand, advising petitioner that Officer Pigoga's testimony would be more harmful than helpful]

G.   Trial counsel breached attorney client privilege by faxing a ten page document to the prosecutor that contained privileged information and work product thereby sabotaging petitioner's defense.

H.   Trial counsel erred in failing to argue petitioner's innocence and, instead, arguing that the state failed to prove that alleged incident occurred without the consent of J.M.

I.   Conflict of interest.

J.   Failure to call witnesses:

    1.   Officer Cannette to impeach the testimony of J.M. and B.V.
    2.   Officers Cannette and Dobbs to demonstrate that the search of the house revealed no incriminating evidence.
    3.   Character witnesses and other witnesses that petitioner asked counsel to interview and subpoena.
    4.   Alden Shank to testify that he saw J.M. laughing outside the courtroom.
    5.   Officer Pigoga

K.   Failure to adequately prepare for trial and failure to adequately cross-examine the state's witnesses:

    1.   Investigator Grimes: a better cross-examination would have revealed that Grimes was lying about the photo of J.M. that was admitted into evidence; that Grimes lacked knowledge of the simple

facts and his testimony was inconsistent with information contained in police reports; and that the tape recorded statement given by J.M. was questionable as to its authenticity.

2. J.M. regarding statements he made to Investigator Grimes indicating that he and B.V. laughed at the petitioner when he propositioned them.

L. Failure to object:

1. To Exhibit #2.
2. To the prosecution's use of the words "porno," "pornography," and "Homosexual videos."
3. To unfavorable statements by the prosecutor during the appeal bond hearing regarding prior bad acts and petitioner's danger to society.

M. Failure to investigate and present critical evidence:

1. Counsel failed to scrutinize the subpoena duces tecum for Mom's Video.
2. Counsel failed to admit the computer printout from petitioner's computer into evidence.
3. Counsel failed to obtain the tape recording of a statement given by J.M. to police and introduce the tape and transcript of the tape into evidence.
4. Counsel failed to investigate and obtain evidence for possible motives the victim and the police would have had for charging petitioner.
5. Counsel failed to present evidence to support motion for mistrial.

Ground Twenty-Two: Ineffective assistance of appellate counsel.

## II. LEGAL ANALYSIS

The Respondent submits that petitioner presents claims in this federal habeas corpus petition which have not been presented to the state's highest court in a procedurally proper manner and which are now procedurally barred due to petitioner's own procedural default. *Sones v. Hargett*, 61 F.3d 410 (5th Cir. 1995)(when state remedies are rendered unavailable by the petitioner's own procedural default, federal courts are barred from reviewing those claims.); *see also Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)(federal review of a claim is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule); *see also Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998)(an inmate's failure to present claims to the proper state court creates a procedural default for purposes of federal habeas review). In *Sones*, the Fifth Circuit stated:

> When, however, state remedies are rendered unavailable by the petitioner's own procedural default, federal courts are barred from reviewing those claims. As the Supreme Court stated in *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)
>
> > "[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, . . . [then] there is a procedural default for purposes of federal habeas . . ." *Id*. at 735 n.1, 111 S.Ct. at 2557 n.1."

*Sones v. Hargett*, 61 F.3d at 416. When "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review." *Sones, supra*, quoting *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993). By failing to raise the claims in Grounds Four, Seven, Ten, Twelve

13

and Eighteen in petitioner's direct appeal or in his post-conviction motion, Seigfried has failed to

proceed in a procedurally proper manner.  "If a petitioner fails to exhaust state remedies, but the

court to which he would be required to return to meet the exhaustion requirement would now

find the claims procedurally barred, then there has been a procedural default for purposes of

federal habeas corpus relief."  *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Seigfried did

not fairly present the claims in Grounds Four, Seven, Ten, Twelve and Eighteen in either his

direct appeal or in his post-conviction motion.  By failing to raise the facts of these grounds on

appeal or pursuant to a motion for post-conviction relief, Seigfried waived having the Mississippi

appellate courts review the issues on the merits.  Accordingly, Seigfried has thus defaulted

Grounds Four, Seven, Ten, Twelve and Eighteen and this Court is now precluded from reviewing

the claims.

Further, Seigfried cannot show "cause" under the "cause and prejudice" test necessary to

allow this Court to reach the merits of the claims despite the procedural bar because no external

impediment existed to prevent him from raising and discussing the claims properly as grounds

for relief in state court.  *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993).  Therefore,

absent a showing of "cause," it is unnecessary for this Court to consider whether there is actual

prejudice.  *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).  Furthermore, there will be no

"fundamental miscarriage of justice" if Seigfried's claims are not heard on the merits.  The

"fundamental miscarriage of justice" exception is even more circumscribed than the cause and

prejudice exception and is confined to cases of actual innocence, "where the petitioner shows, as

a factual matter, that he did not commit the crime of conviction."  *Fairman v. Anderson*, 188

F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).  To

establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted). Despite an assertion that petitioner has discovered new evidence which is addressed *infra*, Seigfried cannot meet this standard.  Clearly, the facts of the instant case fall far short of establishing that a fundamental miscarriage of justice will result if Seigfried's claims in Grounds Four, Seven, Ten, Twelve and Eighteen are not considered on the merits.

Accordingly, habeas relief cannot be granted with respect to Seigfried's claims in Grounds Four, Seven, Ten, Twelve and Eighteen of the instant petition.

Furthermore, Grounds Six, Eleven and Seventeen, were raised in Seigfried's motion for post-conviction relief and held to be procedurally barred by the Mississippi Supreme Court and are, therefore, precluded from review by this Court.  "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfil a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment."  *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991); *Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995)).  As noted previously, the state supreme court found the issues which Seigfried now raises in Grounds Six, Eleven and Seventeen to be procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1).[5]  The Fifth Circuit Court of Appeals has held that

---

[5]  Mississippi Code Section 99-39-21(1) provides as follows: "Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial, and/or on direct appeal, regardless of whether such are based on

Section 99-39-21(1) is an independent state procedural bar.  *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).  The adequacy of the procedural bar applied to Seigfried's issues in state court depends on "whether Mississippi has strictly or regularly applied it." *Id*. (citing *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)).  However, the petitioner, Seigfried, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id*.  Seigfried has failed to carry his burden of proving an "inconsistent and irregular" application of the bar stated above and has, therefore, defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule. *Id*. at 861.

Federal habeas courts are estopped from reviewing state cases applying an independent and adequate state procedural rule unless the petitioner can demonstrate cause and actual prejudice, which the Petitioner cannot show. *See Coleman*, 501 U.S. at 750; *see also Martin v. Maxey*, 98 F.3d at 849 (*citing Sawyer v. Whitley*, 505 U.S. 333 (1992)).  In explaining the *cause* necessary for excusing a default, the Supreme Court instructed that "there must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753 (emphasis in original).  Examples of objective factors which have been found to constitute *cause* to excuse a procedural default include "interference by officials" and "a showing that the factual or legal basis for a claim was not reasonably available to [petitioner]." *McCleskey v.*

---

the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver."  Miss. Code Ann. § 99-39-21(1).

*Zant*, 499 U.S. 467 (1991).   In addressing cause for a procedural default that may be based in

attorney error, the United States Supreme Court has stated as follows:

> We think, then, that the question of cause for a procedural default does not
> turn on whether counsel erred or on the kind of error counsel may have made. So
> long as a defendant is represented by counsel whose performance is not
> constitutionally ineffective under the standard established in *Strickland v.
> Washington*, *supra*, we discern no inequity in requiring him to bear the risk of
> attorney error that results in a procedural default.

*Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645 (1986).

Although Seigfried alleges ineffective assistance of both trial and appellate counsel, this

Court agrees with the Respondent that the ineffective assistance of counsel claims do not rise to

the level of "constitutionally ineffective" assistance of counsel for reasons that will be discussed

*infra* and therefore cannot constitute cause as prescribed by *Murray*.  Since Seigfried fails to

establish cause, there is no need to consider whether there was actual prejudice to petitioner.

*Saahir v. Collins*, 956 F.2d 115 (5th Cir. 1992).

As previously stated, the "fundamental miscarriage of justice" exception is even more

circumscribed than the cause and prejudice exception and is confined to cases of actual

innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of

conviction."  *Fairman*, 188 F.3d at 644 (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).

To establish the requisite probability that he was actually innocent, the petitioner must support

his allegation with new, reliable evidence that was not presented at trial and must show that it

was "more likely than not that no reasonable juror would have convicted him in light of the new

evidence."  *Id*.  Seigfried fails to establish that a miscarriage of justice will result if his claims are

not considered on the merits.  Accordingly, this Court is precluded from considering the claims

in Grounds Six, Eleven and Seventeen presented in Seigfried's habeas petition due to his default in the courts of Mississippi.

Additionally, the claims asserted in Grounds One, Two, Three, Five, Eight, Nine, Thirteen, Fourteen, Fifteen, Sixteen, Nineteen, Twenty, Twenty-One and Twenty-Two were reviewed and denied on the merits by either the Mississippi Court of Appeals on direct appeal or the Mississippi Supreme Court on post-conviction review. As a result, under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2241, *et seq.,* and because these issues were decided on the merits, habeas relief cannot be granted with respect to these claims. 28 U.S.C. § 2254(d) and § 2254(e)(1).  28 U.S.C. § 2254(d) provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The first exception, subsection (d)(1) applies to questions of law or to mixed questions of fact and law.  *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000).  The second exception, subsection (d)(2), applies to questions of fact.  *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). The claims in Grounds One, Two, Three, Five, Eight, Nine, Thirteen, Fourteen, Fifteen, Sixteen, Nineteen, Twenty, Twenty-One and Twenty-Two are  mixed questions of law and fact. Therefore, subsection (1) of § 2254(d) governs the claims and dictates that a federal court cannot grant

habeas relief to the petitioner unless it determines that the state court's decision involved an unreasonable application of the law to the facts.  The "unreasonable application" standard of review of a state court decision does not mean that a federal court may grant habeas relief based on its simple disagreement with the state court decision; this would amount to nothing more than *de novo* review.  *See Williams v. Cain*, 125 F.3d 269, 276-77 (5th Cir. 1997).  Unless there is such an unreasonable application, there exists a presumption that state court factual findings are correct.  *Knox v. Johnson*, 224 F.3d 470 (5th Cir. 2000).

In *Williams v. Taylor*, 120 S.Ct. 1495, 529 U.S. 362, 146 L.Ed.2d 389 (2000), the United States Supreme Court concluded that §2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Id*. at 1523.  A state court's decision is "contrary to" federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Id*.  A state court's decision involves an unreasonable application of federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies the principle to facts of the prisoner's case; this application of law to facts must be "objectively unreasonable". *Id*. at 1521.  Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. *See also Ramdass v. Angelone,* 530 U.S. 156, 120 S.Ct. 2113 (2000); *Chambers v. Johnson*, 218 F.3d 360 (5th Cir. 2000); *Hill v. Johnson*, 210 F.3d 481 (5th Cir. 2000).

Nevertheless, under § 2254(d)(2), grounds may still merit review if those facts to which the appellate courts applied the law were determined unreasonably in light of the evidence presented. Because the state appellate courts are presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As will be discussed below, Seigfried failed to meet his burden. Accordingly, this Court is barred from reviewing issues already decided on the merits.

## A. Defective Indictment

In Ground One, Seigfried argues that his indictment was defective because the indictment failed to cite to the appropriate statute. This Court agrees with the Respondent that the claim stated in Ground One is strictly a matter of state law and is therefore precluded from habeas review. A state's interpretation of its own laws or rules is no basis for federal habeas corpus relief since no constitutional question is involved. *Bronstein v. Wainwright,* 646 F.2d 1048, 1050 (5th Cir. 1981). The role of a federal court is more limited than that of the state appellate court. *Skillern v. Estelle,* 720 F.2d 839, 852 (5th Cir. 1983). In *Mendiola v. Estelle,* 635 F.2d 487, 491 (5th Cir. 1981), the Court stated: "We have repeatedly admonished that we do not sit as a super state supreme court on a habeas corpus proceeding to review error under state law." The federal courts hold no supervisory power over state judicial proceedings, and federal habeas corpus relief is appropriate only when a conviction has been obtained in violation of some constitutionally protected right. *Smith v. Phillips,* 455 U.S. 209, 221 (1981). A "mere error of state law" is not a denial of due process. *Engle v. Isaac,* 465 U.S. 107, 121 and n.21, 102 S.Ct. 1558 and n.21, 71 L.Ed.2d 783 (1982).

In the instant claim, Seigfried points out that he was charged pursuant to section 97-3-95©) which, he claims, is not in and of itself a crime.  Seigfried contends that the indictment should have charged him pursuant to section 97-3-95(**1**)©).[6]  The Petitioner argues that the omission of subsection (1) from the statute citation on the face of the indictment rendered the indictment invalid because the error constituted a failure of the indictment to charge a crime.  Due to this defect in the indictment, Seigfried claims he was not properly noticed as to what crime he was being charged which made it impossible for him to prepare a defense.

The sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment was so defective that the convicting court had no jurisdiction.  *Riley v. Cockrell,* 339 F.3d 308, 313-14 (5th Cir. 2003); *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994) (*citing Branch v. Estelle*, 631 F.2d 1229 (5th Cir. 1980);  *Alexander v. McCotter,* 775 F.2d 595, 598 (5th Cir. 1985) (citations omitted).  In Mississippi, questions regarding the sufficiency of an indictment are determined by reference to Rule 7.06 of the Uniform Circuit and County Court Rules which provides, in pertinent part, that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation."  *See* URCCC 7.06.

---

[6]Miss. Code Ann. § 97-3-95(1) provides as follows:

(1) A person is guilty of sexual battery if he or she engages in sexual penetration with:

(a) Another person without his or her consent;

(b) A mentally defective, mentally incapacitated or physically helpless person;

(c) A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child; or

(d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.

In the instant case, Seigfried was more than notified of the crime for which he was charged. To argue otherwise is simply ludicrous. The Respondent submits to the Court that Seigfried is correct to the extent that the code section cited at the top of the indictment was not a complete citation. Seigfried, however, is incorrect in his assertion that the indictment failed to charge a crime. A review of the indictment reflects that the crime charged, *i.e.*, sexual battery, is prominently asserted in capital letters at the top of the indictment. *See* C.P. at 6. The language contained in the body of the indictment charges that petitioner "did wilfully, purposely, unlawfully and feloniously commit Sexual Battery upon J.M., without the consent of the said J.M., by engaging in the act of sexual penetration, to-wit: by performing fellatio on the said J.M., . . . ." *Id*. While this language in the indictment is reflective of section (1)(a) of the statute and not (1)( c), the Court fail to find that the petitioner could be confused about what crime was actually charged.[7]

Furthermore, if the state court has held that an indictment is sufficient under state law, "a federal court need not address that issue." *McKay,* 12 F.3d at 68 (citations omitted). It is noted that this specific argument regarding a defect in the indictment was not raised until petitioner filed for post-conviction relief. The supreme court, however, found that the issue of whether the indictment was defective was procedurally barred under the doctrine of res judicata. *See* Cause No. 2005 - M - 0731. On direct appeal, the court did address the language contained in the

---

[7]Respondent submits he is unaware of why the state charged petitioner under (1)(a) given that petitioner's victim was under the age of sixteen at the time of the crime. It would seem that a charge pursuant to (1)© would have been an easier case for the prosecution to the extent that consent is not an element when sexual battery is committed against a minor. This notwithstanding, the prosecution chose to proceed under (1)(a) and, as such, had to prove that the sexual battery was committed against J.M. without his consent.

indictment in its discussion of whether the verdict was against the weight of the evidence–
specifically, whether the state met its burden of proving consent as required under Section 97-3-
95(1)(a). *See* Seigfried, 869 So. 2d at 1043. The court determined that the state had proved the
elements of the crime charged in the indictment. *Id*. Given the court's review of the charging
language in the indictment and the absence of any apparent concern by the court of whether the
indictment sufficiently charged a crime, it can be concluded that the court indeed found the
indictment as a whole to be sufficient.

"[M]ere errors of state law are not the concern of this Court . . . unless they rise for some
other reason to the level of a denial of rights protected by the United States Constitution."
*Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1993). No such right has
been asserted here. The alleged violation of state rules, without more, is not a cognizable ground
for habeas corpus relief. Accordingly, in addition to the fact that the claim in Ground One is
devoid of any merit whatsoever, the claim is a matter of state law that is precluded from habeas.
The claim in Ground One will be denied.

## B. Jury Instructions

Generally, challenges to jury instructions may not form a basis for federal habeas corpus
relief. *Gilmore v. Taylor*, 113 S.Ct. 2112, 2118-19, 124 L.Ed.2d 306, 318 (1993); *Estelle v.
McGuire*, 502 U .S. 62, 71-71 (1991). Unless a petitioner establishes that an improper
instruction rose to the level of a constitutional violation, habeas corpus will not lie to set aside
the conviction. *Taylor*, 113 S.Ct. at 2121, 124 L.Ed.2d at 322; *McGuire*, 502 U.S. at 72. The
burden of demonstrating that errors in jury instructions were sufficiently prejudicial to support a
collateral attack on the constitutional validity of a state court's judgment is even greater than the

showing required to establish plain error on direct appeal. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "A petitioner must show that the erroneous instruction by itself so infected the entire trial that the resulting conviction violates due process." *Mayabb v. Johnson*, 168 F.3d 863 (5th Cir. 1999) citing *Henderson, supra*. That being said regarding a challenge to an instruction that was given, the Respondent submits to the Court that the converse also applies. As applied conversely, "[t]he relevant inquiry is whether the failure to give an instruction 'by itself so infected the entire trial that the resulting conviction violates due process.'" *Galvin v.* Cockrell, 293 F.3d 760, 765 (5th Cir. 2002)(*quoting  Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

In Ground Two, Seigfried argues that Instruction S-1should not have been given because it did not contain the correct statement of the law and was not warranted by the evidence.  The appellate court addressed this issue on direct appeal and correctly found that Instruction S-1 accurately tracked the language of the statute under which Seigfried was charged.[8]  *See Seigfried*, 869 So. 2d at 1045.  Seigfried's complaint in this claim is derived from his erroneous belief that because his victim was a minor at the time of the crime, the state was required to prove sexual battery of a minor pursuant to section 97-65-3(1)© and the jury had to be given instructions that tracked the language of that particular subsection, not subsection (1)(a) which has no regard for the age of the victim and requires proof that the sexual battery was committed without the consent of the victim.   Seigfried clearly does not comprehend the fact that he was not charged with the sexual battery of a minor.  Had Seigfried been charged with the sexual battery of a

---

[8]As noted previously, despite the fact that Seigfried's victim was a minor, the indictment charged petitioner as if the sexual battery was committed against an adult, thus requiring the state to prove the additional element that the acts occurred without the consent of the victim. *See* C.P. at 6.  Instruction S-1 simply instructed the jury as to the crime that was charged.

minor, perhaps he would have an argument.  However, under the facts of the instant case,

Instruction S-1 was a proper statement of the law for the crime with which Seigfried was

charged.  As such, Seigfried cannot demonstrate that the instruction was erroneously given much

less that the granting of Instruction S-1 so infected the entire trial that Seigfried's right to a fair

trial was violated.

In Ground Three, Seigfried argues that the trial court erred in failing to instruct the jury

on a lesser included offense of fondling.  Seigfried contends that the failure to give the

instruction resulted in his receiving an unconstitutional sentence.  As noted previously, Seigfried

raised the claim in Ground Three in his petition for post-conviction relief and the supreme court

denied the claim on the merits.  *See* Cause No. 2005 - M - 0731.

The Respondent submits to the Court that a lesser included offense instruction for

fondling was not requested and the respondent is unaware of any duty of the trial court to give a

lesser included instruction *sua sponte*.  This is especially true under the facts of the instant case

as the victim's version of the events that took place clearly constituted sexual battery and not

fondling.   It was the jury's job to determine whether they believed the victim's version of what

happened on the night in question.  In the instant case, the jury obviously believed the victim and

returned a guilty verdict.  Seigfried was sentenced accordingly.  Seigfried simply cannot

demonstrate that the failure of the trial court to give a lesser included instruction for fondling

deprived him of a fair trial.  Furthermore, the decision regarding whether to grant an instruction

on a lesser included offense in a non-capital case does not raise a constitutional issue.  *Creel v.

Johnson*, 162 F.3d 385, 390 (5th Cir. 1998)(citations omitted)

Accordingly, the resolution of the issues in Grounds Two and Three by the court of appeals and/or the supreme court was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Therefore, habeas relief is not warranted.

### C.  Admission into Evidence of State's Exhibit #1

In Ground Five, Seigfried argues that the trial court erred in admitting into evidence the receipt from the video store (State's Exhibit #1)indicating that petitioner had rented three movies, two of which were identified on the receipt as "adult" movies.  While petitioner cites to numerous problems with the method in which police located the store where the receipt was found, his primary complaint is that the receipt was not properly authenticated as the state failed to present the testimony of the custodian of the records for the video store that produced the receipt.  On direct appeal, the appellate court found as follows:

> On appeal to this Court, Seigfried argues that the receipt was inadmissible without a custodian of records from the video store testifying as to the authenticity of the receipt. The trial judge ruled the receipt admissible based on Officer Grimes's testimony that he obtained the receipt after presenting a properly executed subpoena duces tecum from the justice court. Additionally, the judge found sufficient indicia of trustworthiness, citing to Mississippi Rule of Evidence 902(11)(a)'s concluding sentence which states with regard to self-authentication of records of regularly conducted activities, "Such records are not self-authenticating if the sources of information or the method or circumstances of preparation indicate lack of trustworthiness."
>
> Rule 901(a) of the Mississippi Rules of Evidence states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. We note the previously stated standard of review concerning the trial court's considerable discretion in admitting evidence. Having reviewed the circumstances under which the receipt was obtained, Officer Grimes's testimony concerning the same, and the judge's ruling as dictated in the record, we find the judge did not abuse his discretion in admitting the evidence.

This issue is without merit.

*See Seigfried*, 869 So.2d at 1047.

"A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir.1994). "[I]n reviewing state court evidentiary rulings, the federal habeas court's role 'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson,* 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted); *see also Jackson v. Johnson,* 194 F.3d 641, 656 (5th Cir. 1999). The "erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson,* 194 F.3d at 656.

The Court is of the opinion that the admission of the receipt into evidence was not erroneous. As the appellate court noted, the record indicates that the receipt was obtained pursuant to a valid subpoena duces tecum that was hand-delivered by Investigator Grimes to Mom's Video at which time personnel from Mom's video turned over to Investigator Grimes the receipt at issue. *See* S.C.R. at 143-154. Outside the presence of the jury and pursuant to petitioner's objection, the trial court considered whether the Mississippi Rules of Evidence permitted admission of the receipt as a self-authenticating document. *Id*. The trial court reviewed the language of Mississippi Evidence Rules 901(A), 902(11)(A), and 803(24) and heard arguments of counsel before concluding that sufficient indicia of trustworthiness existed to allow the receipt to be admitted into evidence without the affidavit or testimony of a records'

27

custodian.  *Id*. The receipt was clearly admissible under state evidentiary rules.  However, even

assuming *arguendo* that the trial court erred in admitting the receipt, the evidence did not play a

"crucial, critical and highly significant" role in the jury's finding of guilt nor did it render

petitioner's trial fundamentally unfair.  While the receipt did lend credence to the testimony from

both J.M. and B.V. that petitioner took them to the video store on the night in question and

rented "The Patriot" and two adult videos, the Court agrees with the respondent that the success

of the case was hardly dependent on the receipt, given the strong testimony by the victim and an

eyewitness regarding the actual sexual act that forms the basis for the crime charged.  Further,

petitioner's primary defense was not that the sexual act did not occur but rather, that the act

occurred with the consent of the victim.

  The Respondent next turns to whether the statement "ran afoul of a constitutional right."

While petitioner does not specifically argue that admission of the receipt violated the holding by

the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354,

1374 (2004), it deserves consideration given that *Crawford* was decided after the appellate court

rendered its decision but before the supreme court denied certiorari review.  In *Crawford*, the

Court held that testimonial hearsay is admissible only if the declarant is unavailable to testify at

the trial and the accused had a prior opportunity to cross-examine the declarant.  *See Crawford*,

541 U.S. at 68, 124 S.Ct. at 1374.  The Court indicated, however, that not all hearsay evidence is

testimonial such that the core concerns of the Confrontation Clause are implicated.  *Id*. at 51,

1364.  The Court does not find that situation to he present in the instant case; because the receipt

would qualify as business record, the Confrontation Clause is not implicated in the instant case.

*Id*. at 56, 1367.

Accordingly, the appellate court's determination that the receipt was not admitted in error was neither contrary to nor an unreasonable application of clearly established federal law and therefore, habeas review will be denied.

### D.  Unlawful Arrest and Search Warrant

In Ground Eight, Seigfried raises a Fourth Amendment challenge to his arrest and to the search warrant authorizing a search of petitioner's house.  Seigfried argues that his arrest and the subsequent issuance of the search warrant was unconstitutional because the underlying facts and circumstances upon which the arrest and the warrant were based were lies provided to Investigator Cannette by the accusers.  In support of his argument, petitioner cites to a laundry list of alleged inconsistencies he claims to have identified from statements given by the accusers and contained in a multitude of police reports that were generated as a result of the investigation into the crime for which Seigfried has now been convicted.   It is noted that the claims in Ground Eight were raised by petitioner in his post-conviction motion and found to be without merit.  *See* Cause No. 2005 - M - 0731.

The claims in Ground Eight are wholly unsupported by the record and even assuming *arguendo* that the claims did have merit, Seigfried's Fourth Amendment challenge would be precluded from habeas review pursuant to the holding in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Court held that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial . . . ."  *Id*. at 482.  The habeas petitioner bears the burden to prove the denial of a full and fair hearing.  *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986).

First, the respondent submits that this claim is a nonissue because there was no evidence introduced at trial that flowed from Seigfried's arrest or the search of his house. The state's entire case was based on the testimony of the victim, J.M., his friend, B.V. and Investigator Grimes. Nothing that was said by any of these witnesses was derived from Seigfried's arrest or from the search of the house. However, ignoring this minor detail, the respondent submits that the petitioner has not shown that the Mississippi Supreme Court's determination on post-conviction review- that this claim lacked merit- was not a product of a full and fair litigation of the matter as contemplated by *Stone*, *infra*. *See Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978)(holding that consideration on the merits by a state appellate court will suffice to raise the *Stone* bar for habeas review of a Fourth Amendment claim.). Therefore, in addition to being without merit, Seigfried's illegal arrest and search warrant claims are also barred from federal habeas review under *Stone*, *infra*.

### E. Weight of the Evidence

Seigfried's rambling arguments in the instant petition can be liberally construed to indirectly pose a challenge to the weight of the evidence, which the respondent submits is not an issue within the purview of a federal habeas court.[9]  *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985)("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . . ."). As such, Seigfried is not entitled to relief based on his challenge to the weight of the evidence in Ground Five.

---

[9]Respondent has enumerated what can be construed as challenge to the weight of the evidence as Ground Nine.

Further, even if the matter was appropriate for habeas review, as the respondent notes,

the state appellate court reviewed the weight of the evidence, citing the appropriate state law

standard, and concluded as follows:

> Seigfried's main argument in this issue concerns whether the State proved J.M. failed to consent.
>
> * * *
>
> Whether or not J.M. consented was for the jury to determine based on evidence presented to them.  Failure to resist a sexual advance out of perceived fear of bodily harm has been shown to negate allegations that such inaction constituted consent. [citation omitted]
>
> * * *
>
> The jury was told how J.M. cried after the fact, how he felt intimidated into submission, and how he was under the influence of alcohol during the episode.  Although J.M. failed to show that Seigfried threatened him or assaulted him in any way, save the act at issue, the jury was able to view this evidence and the demeanor of the witnesses in determining whether or not J.M.'s actions constituted consent.  Accordingly, we will not disturb the verdict.

*Seigfried*, 869 So. 2d at 1043-1044.   Such a determination regarding the weight of the evidence

should be entitled to the same deference afforded a state appellate court's finding of the

sufficiency of the evidence.  *Cf. Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir.), *cert. denied*

474 U.S. 855 (1985); *Gibson v. Collins*, 947 F.2d 780 (5th Cir. 1991); *Callins v. Collins*, 998

F.2d 269, 276 (5th Cir. 1993) ("where state appellate court has conducted a thorough review of

the evidence . . . . it's determination is entitled to great deference.").  Seigfried has presented

nothing in his habeas petition to overcome the deference afforded to the findings of fact made by

the state appellate court (*see* 28 U.S.C. § 2254(e)(1)); furthermore, Seigfried has failed to prove

that the state court decision was an unreasonable application of law to the facts.  *See Williams v.*

*Taylor, supra*.   Accordingly, Seigfried is not entitled to relief based on his claim challenging the

weight of the evidence in Ground Nine of the  instant petition.

### F.  Prosecutorial Misconduct

In Ground Thirteen, Seigfried alleges three instances of prosecutorial misconduct: (1)  the prosecutor referenced the videos as homosexual or pornographic in nature; (2) the  prosecution failed to disclose J.M.'s tape recorded statement prior to trial; and (3) the prosecution intentionally and prejudicially withheld the identity of J.M. until the afternoon of trial.  The United States Supreme Court has held that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1044 (1985).  None of the allegations cited *supra* affected the fairness of the trial.  The misconduct alleged in (2) and (3) above is frivolous.  As to petitioner's claim that the prosecution failed to disclose J.M.'s tape recorded statement, by petitioner's own admission, the statement was disclosed to Seigfried's attorney twice–one week before trial and apparently, a more legible copy on the afternoon of trial.  *See* Petition, pp. 51-52.  Petitioner's attorney obviously was satisfied with the disclosure, as counsel did not see fit to allege a discovery violation. More importantly, however, defense counsel questioned J.M. about the tape recorded statement during trial.  *See* S.C.R. at 113.

In his claim (3), Seigfried contends that the prosecution intentionally withheld J.M.'s identity from petitioner until the day of trial; however, certainly, at some point during the discovery process, Seigfried became aware of J.M.'s identity.  For example, on page 61 of Seigfried's petition, petitioner alleges that defense counsel lied to him for over ten months

regarding whether both J.M. and B.V. would testify against him; certainly during this period the there was a reference to the identity of the victim.

As regards the Petitioner's first claim of prosecutorial misconduct, Seigfried argues that the prosecutor's references to the videos rented on the night in question as homosexual or pornographic in nature was irreparably prejudicial and unsupported by the evidence.  To the contrary, the Respondent has identified from the record three of these alleged prejudicial references by the prosecutor: once during opening statements, once during the direct examination of J.M. and once during closing arguments.  *See* S.C.R. at 77, 90, 205-206.  However, a review of the record also reflects that both J.M. and B.V. testified that the two adult movies rented by petitioner from Mom's Video were pornographic and contained homosexual material.  *See* S.C.R. at 89, 91, 92, 113, 128, 131.  The prosecutor's references to the videos using the terms "porno," "pornographic," or  "homosexual" was clearly supported by the testimony presented at trial.  The comments therefore cannot be deemed improper, and no further analysis is warranted.

However, for argument's sake, setting aside the lack of impropriety in the prosecutor's statements and proceeding with an analysis pursuant to the three factor test set forth in *United States v. Wise*, 221 F.3d 140, 153 (5th Cir. 2000), the undeniable conclusion is that none of the comments warranted reversal. Under *Wise*, three factors are used to determine whether improper comments by a prosecutor warrants reversal: (1) the magnitude of the statement's prejudice; (2) the effect of any cautionary instructions given; and (3) the strength of the evidence supporting the conviction. *See United States v. Wise*, 221 F.3d 140, 153 (5th Cir. 2000); *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994).

Applying the test, the references were not prejudicial, and no cautionary instruction was given because the references did not warrant an instruction.  And, finally, the strength of the evidence was more than sufficient to support the verdict of guilt with or without the alleged improper statements.

Accordingly, the supreme court's determination that the allegations of prosecutorial misconduct lacked merit is neither contrary to nor an unreasonable application of clearly established federal law and therefore, habeas review should be denied**.**

### G.  Motion for Mistrial

In Ground Fourteen, Seigfried contends that the trial court erred in denying petitioner's motion for mistrial.  A review of the record indicates that at the end of J.M.'s testimony, outside the presence of the jury, defense counsel moved for a mistrial on the basis that J.M.'s crying on the witness stand was prejudicial to the petitioner.  *See* S.C.R. at 99.  In response, the state argued that J.M. was understandably emotional given the situation and the embarrassing nature of having to tell twelve strangers in graphic detail about the sexual act perpetrated upon him by Seigfried.  *Id.* at 100.  The judge overruled the motion, stating as follows:

> It is not unusual in assault cases, sexual assault cases, whether it's a male or a female testifying that they become very emotional and cry, due to the nature of the charge and the facts that they are stating.  The Court does not feel that his emotional state was any more than others have been, and there's not much that anybody can do about it.  And it's understandable.
> The Court does not feel that the conduct exhibited in front of the jury rises anywhere close to the level that would require a mistrial.  The motion is noted for the record.  It is overruled.

*Id.*  Under both state law and federal law, the determination to grant or deny a motion for a mistrial is left solely to the discretion of the trial judge.  *See Spann v. State*, 771 So. 2d 883, 889

(2000); *U.S. v. Honer*, 225 F.39 549, 554 (5th Cir. 2000). Nothing in the record suggests that the judge abused that discretion in this instance, and the record does not bear out that this allegation is a matter of constitutional magnitude. As such, there exists no cognizable ground for habeas corpus relief.  Accordingly, the supreme court's determination on post-conviction review that this issue did not give rise to a violation of a state or federal right was neither contrary to nor an unreasonable application of clearly established federal law and therefore, habeas review will be denied.

### H.  Denial of Post-Conviction Petition and Request for Evidentiary Hearing

In Ground Fifteen, Seigfried argues that the state supreme court erred in denying his application for post-conviction relief without first conducting an evidentiary hearing.  State post-conviction proceedings are governed by the Mississippi Uniform Post-Conviction Collateral Relief Act.  *See* Miss. Code Ann. § 99-39-1 *et seq.*  Under state law, Seigfried was required to file an application and motion with the Mississippi Supreme Court seeking leave to proceed in the trial court.  *See* Miss. Code Ann. § 99-39-27.  Upon receipt of the application, the supreme court had the option of either denying or granting the application.  *See* Miss. Code Ann. § 99-39-27(5), (6).  If the supreme court had determined that Seigfried had demonstrated a denial of a state or federal right, the supreme court would have either granted relief or granted leave for further proceedings in the trial court such as an evidentiary hearing.  *See* Miss. Code Ann. § 99-39-27(7).  In this case, however,  the supreme court determined that Seigfried's claims were either procedurally barred or without merit and therefore did not establish the denial of a state or federal right.  As such, the application was denied.  Clearly, the state post-conviction process is a matter of state law and not a matter appropriate for habeas review.

35

As stated previously, a state's interpretation of its own laws or rules is no basis for federal habeas corpus relief since no constitutional question is involved. *Bronstein v. Wainwright,* 646 F.2d 1048, 1050 (5th Cir. 1981). A "mere error of state law" is not a denial of due process. *Engle v. Isaac,* 465 U.S. 107, 121 and n.21, 102 S.Ct. 1558 and n.21, 71 L.Ed.2d 783 (1982). "[M]ere errors of state law are not the concern of this Court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1993). No such right has been asserted here. The alleged violation of state rules, without more, is not a cognizable ground for habeas corpus relief. *Edwards v. Butler,* 882 F.2d 160, 164 (5th Cir. 1989) (citations omitted). Accordingly, Seigfried is not entitled to relief for his claim in Ground Fifteen.

## I.  Improper Legal Advice from the Court

In Ground Sixteen, Seigfried argues that it was error for the trial judge to give unsolicited legal advice regarding whether Officer Pigoga should testify for the defense. The comment in question occurred outside the presence of the jury and the attorney for the state when defense counsel asked that he be allowed to put something on the record regarding the attorney/client privilege. The discussion that took place between defense counsel, the court and petitioner is as follows:

> MR. DAVIS: Yes, your Honor. During the course of the children's direct testimony, they indicated that these events took place in a living room area, not in the bedroom. There was a previous statement that an Officer P-I-G-O-G-A took from the two children that indicated that these events took place in the bedroom. Of course, the rest of their statement that they gave to this officer, and I'm going to make it as an exhibit to this proffer, is very consistent with what their testimony was at trial. And I explained to my client that I did not think it would be in his best interest to put this officer on the stand to get this one point out of him when I can predict Mark Ward will start asking this officer all the consistent points and

the prior consistency of their statement to him as to what their testimony was at trial.  So I feel that putting this officer on the stand would do him a lot more harm than good.

My client wanted me to put him on the stand, but as we walked in the courtroom just then, he decided– he agrees with me that he, I think, sees that this would possibly hurt him more than it would help him.

THE COURT: It sounds like it would hurt him a lot more than help him.

MR. DAVIS: Do you agree with that, Frank?

DEFENDANT SEIGFRIED: Yes, sir.

THE COURT: So we don't have a conflict.

MR. DAVIS: So that conflict has been resolved.

THE COURT: Mr. Seigfried, you agree that you do not want to call him to the stand?

DEFENDANT SEIGFRIED: Yes, sir.

*See* S.C.R. at 168-169.  Seigfried claims that the judge's comment, "It sounds like it would hurt him a lot more than help him," was an indication of the judge's bias and created fear and paranoia in Seigfried just before he began his case in chief.  Respondents fail to see the constitutional violation.  The supreme court's determination on post-conviction review that Seigfried had not demonstrated a violation of a state or federal right was not unreasonable.  Accordingly, habeas relief will be denied.

### J.  Right to Self-Representation on Appeal

In Ground Nineteen, Seigfried argues that he was denied his right to self-representation at trial and on appeal due to the failure of both the trial court and appellate court to permit the

termination of counsel by Seigfried.[10]  Seigfried contends that on August 15, 2002, following his

trial, he informed his trial attorney, Jim Davis, that his services would no longer be needed once

the appeal was perfected. The record indicates that defense counsel, Jim Davis, filed a notice of

appeal on petitioner's behalf as well as a motion to proceed in forma pauperis with attached

affidavit of indigency on August 27, 2002.  *See* C.P. at 45, 49.  Thereafter, the trial court granted

Seigfried *in forma pauperis* status and appointed Jim Davis as appellate counsel since Davis was

already familiar with the case.  *See* C.P. at 54, 58.  Seigfried contends that Davis intentionally

went behind Seigfried's back and had himself appointed as trial counsel.  Respondents submit

that the record does not support this contention in any manner whatsoever.  Seigfried indicates

that on October 23, 2002, he sent letters to the circuit clerk, the supreme court clerk, and all other

interested parties informing them that Davis' last act as his attorney was to perfect his appeal.

*See* attachments to "Amended Petition."  Thereafter, Seigfried began a campaign to rid himself of

Davis and secure the appointment of substitute counsel.  The following represents some of the

many filings by Seigfried in furtherance of this mission:  On November 13, 2002, Seigfried filed

a motion for appointment of counsel in the Mississippi Supreme Court asking that he be

appointed a different attorney who was located in the Jackson area.  *See* Cause No. 2002-KA-

1488, Volume I.  Thereafter, Davis filed motions in both the supreme court and circuit court

seeking to withdraw as appellate counsel per the wishes of petitioner.  *Id*.  On January 9, 2003,

the circuit court denied the motion to withdraw finding no specific claims that would warrant

removal of Davis and stating that petitioner did not have the right to choose who the state

---

[10]Respondent notes that although Seigfried argues that he was denied his right to
represent himself at trial and on appeal, petitioner's actual grievance in the instant petition
pertains only to the right to self-representation on appeal.

appointed as appellate counsel.  *See* Exhibit B.  The supreme court in an order dated February 6,

2003, dismissed petitioner's motion for appointment of counsel as moot, noting the circuit

court's denial of Davis' motion to withdraw as counsel.  *See* Cause No. 2005 - M - 0731.   On

February 24, 2003, Seigfried filed a "Motion To Stay Appeal" in the supreme court informing

court of his termination of Davis as counsel and asking the court what options he had regarding

representation.  *See* Cause No. 2002-KA-1488, Volume I.  On May 13, 2003, petitioner filed a

motion to terminate counsel in the supreme court and requested that he be appointed of a lawyer

from outside Harrison County.  *See* Cause No. 2005 - M - 0731.  The supreme court denied this

motion in an Order filed on June 3, 2003, noting that petitioner's brief had already been filed.  *Id*.

On January 7, 2004, Seigfried again filed a motion to dismiss counsel and requested appointment

of substitute counsel from outside of Harrison County.  *See* Cause No. 2002-KA-1488, Volume

II.  This motion was denied by the supreme court on January 20, 2004.  *See* Cause No. 2002-KA-

1488, Volume III.

 Seigfried now argues that he wanted to represent himself on appeal and was denied that

right.[11]  Even if self-representation is what petitioner sought, he had no such right.  In *Martinez v.*

*Court of Appeal of California, Fourth Appellate District*, 528 U.S. 152, 163 (2000), the Supreme

Court concluded that states are not required to recognize a constitutional right to self-

representation on direct appeal from a criminal conviction.  Under the facts of *Martinez*, the

Court found further that the appellant was not deprived of a constitutional right when the state

---

[11]It is noted that while Seigfried loosely used the term "pro se" in his state court
pleadings, all of his motions sought the appointment of substitute counsel not self-representation.

required him to accept a state-appointed attorney against his will.  *Id*. at 164.  Seigfried's claim in Ground Nineteen is meritless.

Accordingly, the supreme court's determination that Seigfried was not denied his right to self-representation was neither contrary to nor an unreasonable application of clearly established federal law and therefore, habeas will be denied.

### K.  New Evidence

In Ground Twenty, Seigfried argues that he has new evidence that demonstrates his actual innocence.  First, Seigfried claims that he has evidence that Investigator Grimes forged statements given to police by Jeffrey Moran[12] and B. V. as well as the transcript of a tape recorded statement given by J.M.  The evidence of this forgery consists of petitioner's claim that a handwriting expert has determined that the statement from Jeffrey Moran was written by Investigator Grimes.  According to Seigfried, this handwriting expert also suspects that B.V.'s statement was written by Investigator Grimes.  Seigfried next argues that Carmila Henson has come forward since trial with information that she saw J.M. driving Seigfried's car on November 11, 2000, and that the police stopped him and made him return Seigfried's car keys that J.M. and B.V. had forcefully taken from Seigfried.

As noted previously, the supreme court addressed Seigfried's claim of new evidence on post-conviction review as follows:

> The panel finds that Seigfried's claim that he has newly discovered evidence is without merit.  That evidence was reasonably discoverable at the time of trial and the evidence is not of such nature that it would be practically conclusive that had

---

[12]It is noted that Jeffrey Moran came forward after Seigfried's arrest and alleged that Seigfried had sexually assaulted him some twenty years prior to the sexual battery of J. M.

> such been introduced at trial it would have caused a different result in the
> conviction or sentence.

*See* Cause No. 2005 - M - 0731. The evidence asserted in this ground as newly discovered

evidence was certainly reasonably discoverable prior to trial are such "new evidence" claims are

completely unfounded and unsupported by anything other than Seigfried's self-serving claim of

the existence of such evidence.

More importantly, however, Seigfried fails to state a claim upon which habeas relief may

be granted.  "[I]t has long been a habeas rule that 'the existence merely of newly discovered

evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas

corpus.'" *See Lucas v. Johnson*, 132 F.3d 1069, 1074 (5th Cir. 1998)(citations omitted). "In

*Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L.Ed.2d 203 (1993), the Supreme Court

held that such a claim [actual innocence] does not state an independent, substantive

constitutional claim and was not a basis for federal habeas relief."  *See Graves v. Cockrell*, 351

F.3d 143, 151 (5th Cir. 2003). "Throughout the [*Herrera*] opinion, the Court returns to its original

premise that 'a claim of actual innocence is not itself a constitutional claim, but instead a

gateway through which a habeas petitioner must pass to have his otherwise barred constitutional

claim considered on the merits.'"[13] *Id*. (quoting *Herrera*, 506 U.S. at 404).

---

[13]In *Graves*, the Fifth Circuit acknowledged that the Supreme Court left open the possibility that a "truly persuasive actual innocence claim may establish a constitutional violation sufficient to state a claim for habeas relief" but indicated its [the Fifth Circuit's] rejection of such a possibility.  *See Graves*, 351 F.3d at 151 (quoting *Herrera*, 506 U.S. at 417).  However, even if this Court were to consider such a possibility, the state courts have adjudicated the merits of Seigfried's newly discovered evidence claims and found both claims to be lacking in merit. *See* Cause No. 2005 - M - 0731.  As such, the finding of the state court should be presumed correct. *See*, 28 U.S.C. § 2254(e)(1).

Accordingly, neither of Seigfried's assertions of newly discovered evidence to support his claim of innocence constitute "independent, substantive constitutional claim[s]"; Seigfried is not entitled to habeas relief on these assertions.

## L.  Ineffective Assistance of Trial Counsel

In Ground Twenty-One, Seigfried asserts that his counsel was constitutionally ineffective. The controlling law for such claims is *Strickland v. Washington*, 466 U.S.668 (1984).  As stated previously, the Mississippi Supreme Court applied *Strickland* to petitioner's claims and this Court is of the opinion that the court's application of *Strickland* to the facts of the instant case was reasonable and correct.  However, even assuming *arguendo* that this Court found the state supreme court's application of *Strickland* to be incorrect, habeas relief still could not recommend unless it found that the state supreme court's application of *Strickland* to be objectively unreasonable or an actual misapplication of the law.  *Neal v. Puckett*, 228 F.3d 230, 236 (5th Cir. 2002).

To merit habeas corpus relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in *Strickland* by demonstrating both constitutionally deficient performance by counsel and actual prejudice as a result of such ineffective assistance.  *See also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994)  A petitioner's failure to establish both prongs of the *Strickland* test warrants rejection of his claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986)(overruled on other grounds).

Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth

42

Amendment.  *Strickland*, 466 U.S. at 687.  Judicial scrutiny of counsel's performance is highly

deferential and must be considered in light of the services rendered at the time, rather than by a

distorted view of 20/20 hindsight.  *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988).  "Our

scrutiny of counsel's performance is 'highly deferential' and we must make every effort 'to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct of the counsel's perspective at the time.'"

*Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994).  Counsel's services are not evaluated in a

vacuum, and all circumstances are considered in determining whether the performance was

reasonable under prevailing professional standards.  *Lavernia*, 845 F.2d at 498.  Finally, there is a

strong presumption that counsel has exercised reasonable professional judgment.  *Strickland*, 466

U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir. 1986).

   To prove prejudice, petitioner must demonstrate that the result of the proceedings would

have been different or that counsel's performance rendered the result of the proceeding

fundamentally unfair or unreliable.  *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116

S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d

282, 286 n.9 (5th Cir. 1997).  To meet the prejudice prong, petitioner must affirmatively prove

and not merely allege prejudice.  *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.), *cert.

denied*, 476 U.S. 1143 (1986).  There is no constitutional entitlement to error free representation.

*Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981), *cert. denied*, 466 U.S. 949 (1982).

   Counsel's performance is considered deficient if "it falls below an objective standard of

reasonableness" as measured by professional norms.  *Strickland*, 466 U.S. at 688.  A

determination must be made of  whether there is a gap between what counsel actually did and

43

what a reasonable attorney would have done under the circumstances. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001). In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). In scrutinizing counsel's performance, every effort must be made to "eliminate the distorting effects of hindsight," and deficiency should not be assumed merely because the Court disagrees with trial counsel's strategy. *Id*. (citations omitted).

The Court agrees with the Respondent that after having reviewed the entire state court record, defense counsel performed correctly in his representation of Seigfried, and no deficiencies can be established. Seigfried has challenged everything that was done or not done by both his attorney and the judge in the trial of this case. The overriding theme of Seigfried's ineffective assistance of counsel claims is that everyone from defense counsel to the police to the court reporter have colluded with one another and manufactured evidence all in an attempt to get petitioner out of the neighborhood. Seigfried's multiple claims establish nothing.

In his first claim of ineffective assistance of counsel, Seigfried argues that defense counsel failed to protect petitioner's constitutional and statutory right to a speedy trial by causing needless delays. In determining whether a petitioner has been deprived of his constitutional right to a speedy trial, the four-pronged test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is the governing authority. In *Barker*, the Supreme Court announced four factors to be weighed in reaching that determination: (1) length of delay, (2) reason for the delay, (3) accused's assertion of the speedy trial right, and (4) prejudice to the accused. *Id*. at 530. These factors must be considered together, and no single factor is determinative. *Id*. at 533. In regard to the length of delay, the *Barker* court stated that this first factor serves as a "triggering

44

mechanism." *Id*. at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay is necessarily dependent upon the peculiar circumstances of the case." *Id*. "The relevant period of delay is that following accusation, either arrest or indictment, whichever occurs first." *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993)(*citing Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975)). In the Fifth Circuit, a one year delay is routinely recognized as "presumptively prejudicial." *Id*. (citing *Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993)). In Mississippi, the supreme court has generally held that a delay of eight (8) months or longer is "presumptively prejudicial." *See State v. Woodall*, 801 S0.2d 678, 682 (Miss. 2001)(*citing Smith v. State*, 550 So.2d 406, 408 (Miss. 1989)).  In the instant case, the time period between Seigfried's arrest on November 11, 2000, and his trial on August 5, 2002, was one year, eight months and twenty-five days.  Under both federal law and state law, this lapse in time would be considered presumptively prejudicial thus triggering the balancing of the remaining *Barker* factors.  A primary reason for the delay might be a strategic move by defense counsel.  According to petitioner, following his arrest and subsequent release from jail on bond on January 3, 2001, he immediately moved to Ohio and entered a treatment facility where he remained for six weeks.  Thereafter, he remained in Ohio and continued with bi-weekly counseling sessions on an outpatient basis with the facility. In a letter dated March 2, 2001, from defense counsel, Jim Davis, to the Veteran's Administration Medical Center, Mr. Davis informs the medical center that Seigfried has charges pending in Harrison County and indicates that he can likely delay petitioner's court appearance for several months as long as petitioner was receiving some type of treatment. *See* Exhibit C.

45

One conclusion defense counsel had the occasion to entertain was that it was in his client's best interest to avoid trial and continue with treatment as long as possible. A review of the circuit court case history reveals nothing sinister or even all that unusual in the attempt to get this case to trial. *See* C.P. at 3-5. The case was initially scheduled for January 14, 2002, but was continued to May 20, 2002. *Id*. On May 20, 2002, the case was again continued to the date on which the trial commenced– August 5, 2002. *Id*. There is nothing in the record regarding the specific reasons for the two continuances. The second *Barker* factor weighs against the validity of the petitioner's claim.

The third *Barker* factor depends on petitioner's assertion of his right to a speedy trial. In the instant case, counsel did not assert this right which could reasonably be construed as strategic choice not to force this case to trial. As such, this factor also weighs against petitioner. The fourth and final factor is whether petitioner was prejudiced by the delay. Seigfried argues that the delay caused him a great deal of anxiety,  and deprived him of the ability to obtain evidence. Certainly there would associated with such a sexual battery charge; however, the petitioner was not incarcerated during the relevant period of time and was able to leave the state to seek treatment for a number of unrelated issues that he had been experiencing prior to the sexual battery charge. A review of the record reveals that defense counsel was actively investigating this case and there is no evidence that defense counsel was negatively impacted in his ability to secure the evidence/information that he needed for this case. Seigfried also submits that the victim and the eyewitness responded to a number of questions by indicating that they did not remember. There is no evidence that the lack of memory attested to by these witnesses negatively impacted petitioner's case.

In balancing all of the factors, Seigfried does not make the necessary showing that he was deprived of his constitutional right to a speedy trial. As such, defense counsel cannot be deemed deficient for failing to pursue or protect his right to a speedy or otherwise statutory trial or for utilizing viable strategic defense options. As such, there is no showing of deficiency or prejudice.

In his second claim of ineffective assistance of counsel, Seigfried argues that defense counsel failed to strike biased jurors, failed to seek a change of venue due to adverse publicity, and that defense counsel excluded petitioner from voir dire. A review of the record does not lend support to these claims of the Respondent. A review of the record indicates that the members of the jury all indicated that they could be fair and impartial. *See* S.C.R. at 2-65. The trial court voir dired the jurors regarding whether they had heard about the case through the media or otherwise and only two potential jurors indicated that they had. *See* S.C.R. at 23-26. The record indicates that both jurors were excused. *Id*. Any pre-trial publicity was not such that a jury could not be empaneled from the citizens of Harrison County. Seigfried offers no evidence that a change in venue was necessary. As to Seigfried's claim that he was excluded by defense counsel from voir dire, the record reveals that petitioner did leave the courtroom during jury selection to go to the bathroom. *See* S.C.R. at 62. The judge acknowledged petitioner's absence prior to beginning jury selection and counsel indicated that he would waive Seigfried's presence during the selection portion. *Id.* There is no evidence that defense counsel "excluded" petitioner from voir dire. It is noted further that the judge made sure that Seigfried was present in the courtroom before continuing to motion hearings. *Id*. at 66. As to the allegations in claim two, Seigfried has shown neither deficiency nor prejudice.

Seigfried next argues that trial counsel allowed the prosecution to ambush Seigfried by going forward on cause number B2402-2001-287 instead of cause number B2402-2001-286 and by presenting evidence that had not been properly disclosed to the defense.  This claim is derived from the fact that Seigfried signed a waiver of arraignment and entry of plea on September 14, 2001, for four sexual battery charges listed as cause numbers B2402-2001-286, B2402-2001-287, B2402-2001-288, B2402-2001-289.  *See* C.P. at 8.  The waiver contained the following statement: "In case of multiple charges, the first numbered cause will be tried first unless notified otherwise by the State of Mississippi." *Id*.  Seigfried claims that because of this statement in the waiver, he thought he was being tried for cause number B2402-2001-286, the first cause listed in the waiver.  Seigfried contends that he was never informed that the state was proceeding to trial on B2402-2001-287 instead.  The Court agrees with the Respondent that, at the very least, the indictment for cause number B2402-2001-287 that was served on defense counsel, satisfied the "unless otherwise notified by the State of Mississippi" language contained in the waiver of arraignment.  *See* C.P. at 6. Further, Seigfried admits throughout the instant petition that he provided defense counsel with information regarding the charge he was facing including a list of sixteen witnesses. Defense counsel cannot be deemed ineffective for failing to prevent an "ambush" when there was no ambush.

Seigfried also contends in this third claim that defense counsel permitted the prosecution to ambush Seigfried with evidence that was never disclosed.   A reading of this claim leaves the Court to infer that Seigfried is referring to the picture of J.M. that was admitted as state's Exhibit #2; there is no evidence that this picture was not disclosed.  This portion of claim three is also an assertion without a basis.

48

In his fourth claim, Seigfried argues that trial counsel was ineffective in failing to request a competency hearing.  Seigfried contends that he was not competent to stand trial and defense counsel was well aware of petitioner's diminished mental capacity.  The constitutional standard as to competency is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as a factual understanding of the proceedings against him."  *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *accord Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993).  Neither the trial record nor the medical reports attached to petitioner's amended petition support a claim of incompetency.  A review of said reports reflects that Seigfried was being treated for depression and alcohol dependence.  There is nothing in these reports that indicates a lack of competency to stand trial.  Further, based on the volume of filings by Seigfried during the trial and appeal process and the correspondence between petitioner and his attorney, it can be determined that Seigfried was indeed competent to stand trial.  Seigfried has thus failed to demonstrate either deficiency on behalf of defense counsel or prejudice that resulted from his allegation in the instant claim.

In his fifth claim, Seigfried argues that defense counsel was ineffective in failing to request an appropriate lesser included offense instruction.  A review of the record indicates that counsel submitted a lesser included offense instruction for simple assault which was denied by the trial court.  *See* S.C.R. at 172.  Seigfried is aggrieved that defense counsel did not submit a lesser included offense instruction for fondling instead of simple assault.  The Respondents submit that the strategy in this case was to take advantage of the mistake in the indictment charging petitioner with sexual battery of another person without their consent instead of

charging petitioner with sexual battery of a minor, which would have been an easier case.  The Respondents further submit that defense counsel was most likely banking on the jury returning with a not guilty verdict due to the prosecution's failure to prove that the sex act occurred without J.M.'s consent.  The Court agrees that this was not an unreasonable strategy.   As such, defense counsel's failure to request a lesser included offense instruction for fondling was a perhaps a strategic move but one that does not rise to the level of deficiency. Further, even assuming deficiency, Seigfried has not demonstrated that the verdict would have been any different but for the failure of counsel to request the lesser included offense instruction.

Seigfried next argues that defense counsel failed to communicate with petitioner during the pre-trial process and failed to provide adequate legal guidance.  Specifically, the Petitioner alleges:  that defense counsel lied to him about both boys testifying; improperly advised petitioner that he would have to give up his right not to testify if he wanted counsel to put Alden Shank and other witnesses on the stand; and, improperly advised petitioner that Officer Pigoga's testimony would be more harmful than helpful.  The Court agrees with the respondent that there is no evidence in the record that defense counsel failed to communicate with petitioner during the pre-trial process, and Seigfried presents no legitimate argument of such. Furthermore,  the advice with which petitioner takes issue in this claim was not deficient.  A review of the record as well as Seigfried's recall of the conversation with defense counsel contained in this petition reflects that defense counsel advised Seigfried that sexual morality should not be brought up or it would open the door for B.V. to testify that Seigfried had also committed sex acts against him.  If Seigfried understood defense counsel to mean that B.V. would not testify at all, it was simply a misunderstanding.  As to Alden Shank or others not testifying unless Seigfried testified, such

advice was sound, as it appears that Shank and the "other witnesses" would have been character witnesses.  Character witnesses would not have been necessary unless Seigfried testified and placed his character in issue.   Finally, as to the testimony of Officer Pigoga, defense counsel stated on the record outside the presence of the jury and the prosecution why he did not want Pigoga to testify; *see* S.C.R. at 168. Counsel indicated that he had explained to his client that he did not want to put Pigoga on the stand for the purpose of highlighting one inconsistency in J.M.'s testimony when the rest of Pigoga's testimony would demonstrate the consistency of J.M.'s testimony on a variety of fronts. *Id*.   It is noted that Seigfried stated to the court that he was in agreement with this decision.  *Id*.  Seigfried demonstrates neither deficiency nor prejudice in this sixth claim of ineffective assistance of counsel.

Seigfried argues in his seventh claim of ineffective assistance of counsel that defense counsel breached attorney client privilege by faxing a ten page document to the prosecutor that contained privileged information and work product thereby sabotaging petitioner's defense. This claim is nsupported by the record.  As such, there can be no finding of deficiency or prejudice.

Seigfried next argues that defense counsel was ineffective in failing to argue innocence and instead arguing that the state had failed to prove the consent element required to convict for sexual battery.  As has been noted herein by the Respondent, the defense strategy from the beginning was to attempt to take advantage of the mistake in the indictment. Seigfried fails to comprehend that to argue innocence, defense counsel would have had to pit Seigfried's word against that of the victim and B.V. and to do that Seigfried would have had to testify.  Had Seigfried testified, he would have likely opened the door for the state to bring up the other allegations of sexual battery that had surfaced against petitioner.  This was a gamble that

51

Seigfried's attorney chose not to take.  Counsel's decision to argue the "consent" element in the instant case falls squarely within the realm of trial strategy.  As such, Seigfried cannot demonstrate ineffectiveness as to the instant claim.

Seigfried argues in his ninth claim that there existed a conflict of interest on the basis that his private attorney, Jim Davis, was also employed by the Harrison County Public Defender's Office to handle other cases.  Such is not a conflict and this claim is without merit.

In his tenth claim, Seigfried claims that defense counsel failed to call certain witnesses for the defense.  Specifically, petitioner argues (1) that Officer Cannette should have been called to impeach the testimony of J.M. and B.V.; (2)  that Officer Dobbs and Officer Cannette should have been called to testify that they found no physical evidence of sexual battery when they searched the house; (3) that character witnesses, the names of whom petitioner provided counsel, should have been called to testify on petitioner's behalf; (4)  that Alden Shank should have been called to testify that he saw J.M. laughing immediately after J.M. had been on the stand crying for the jury; (5) that Officer Pigoga should have been called to testify  that J.M. and B.V. told him the battery occurred in the bedroom not the living room as they indicated during the trial.

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.  Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001)(citations and internal quotations omitted).  Furthermore, Seigfried must show that but for his attorney's failure to call these witnesses, the jury would have had a reasonable doubt about his guilt.  *Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir.

1998).  As discussed previously, defense counsel explained on the record why he did not want to put Officer Pigoga on the stand.  *See* S.C.R. at 168.  The same issue would have applied to Officers Cannette and Dobbs. As the Respondent states in his Answer, while both officers might have provided testimony that would have called into question some of the information testified to by J.M. and B.V., it is equally as likely that the prosecutor would have highlighted the consistencies.  Seigfried also complains that defense counsel did not call any of the character witnesses whose names petitioner provided prior to trial. The Petitioner has attached unsworn "affidavits" from six of these witnesses and, with the exception of two,[14] none of the "affidavits" provided information about what the witnesses would have testified.  Although not stated in the "affidavits" it appears from Seigfried's arguments that these witnesses primarily would have testified to petitioner's "good" character which is a door that defense counsel could not afford to open.  As to Aldan Shank's testimony regarding J.M.'s alleged change in mood after his testimony, it is doubtful that such testimony would have swayed the judge to grant petitioner's motion for a mistrial.

---

[14]Petitioner attached to his amended petition, unsworn "affidavits" from Aldan Shank and Timothy Volentine.  Volentine indicated that he could have testified that both J.M. and B.V. had been working for Seigfried and had previously been to petitioner's house and in his car.  Shank, as previously noted, indicated that he could have testified to J.M.'s jovial demeanor immediately after leaving the witness stand.

53

For the reasons stated, the Court is of the opinion that defense counsel was not deficient in failing to call the aforementioned witnesses.  In that there was no deficiency, there can also be no finding of prejudice.

Seigfried next complains that defense counsel did not adequately prepare for trial and there was deficient in his cross-examination of Investigator Grimes and J.M.  Specifically, petitioner contends that a better cross-examination of Investigator Grimes would have revealed that Grimes was lying about the photo of J.M. that was admitted into evidence; that Grimes lacked knowledge of the simple facts and his testimony was not consistent with information contained in police reports; and that the tape recorded statement given by J.M. was questionable as to its authenticity. Further, Seigfried argues that had counsel prepared for trial, he would have brought out the fact that J.M. told Investigator Grimes that he and B.V. laughed at petitioner when he propositioned him.  A review of the record indicates that defense counsel was prepared for trial and thoroughly cross-examined the three witnesses put on by the state.  Seigfried's allegations amount to nothing more than speculation based on his review of the record and the evidence after the fact.  As noted previously, judicial scrutiny of counsel's performance is highly deferential and must be considered in light of the services rendered at the time, rather than by a distorted view of 20/20 hindsight.  *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988).  The Petitioner cannot overcome the presumption that counsel exercised reasonable professional judgment in his preparation for trial and in determining what  questions to ask on cross-examination.

In his twelfth claim of ineffective assistance of counsel, Seigfried contends defense counsel was deficient in failing to object to (1) the admission into evidence of state's Exhibit #2; (2) to the prosecution's use of the terms "porno," "pornography," and "homosexual" when referencing the videos rented by petitioner on the night in question; (3) to unfavorable statements by the prosecutor during the appeal bond hearing regarding prior bad acts and petitioner's danger to society.  The Court agrees with the Respondent that defense counsel had no basis on which to object to any of the aforementioned incidents.  *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)   Seigfried has demonstrated neither deficiency nor prejudice in the instant claim.

In Seigfried's final claim of ineffective assistance of counsel, Seigfried alleges a failure to investigate and present critical evidence.  Specifically, petitioner contends that counsel failed (1) to adequately scrutinize the subpoena duces tecum for Mom's Video; (2) to admit into evidence the computer printout from petitioner's computer showing that J.M. and B.V. left a message on the computer thanking Seigfried for the pizza; (3) to obtain and introduce into evidence the tape recording of a statement given by J.M. to police; (4) to investigate and obtain evidence for possible motives the victim and police would have had for falsely charging Seigfried with sexual battery; and (5) to present evidence to support petitioner's motion for mistrial.

In regards to the duty of defense counsel to investigate, the *Strickland* Court stated:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any

> ineffectiveness case, a particular decision not to investigate must be directly
> assessed for reasonableness in all the circumstances, applying a heavy measure of
> deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91. "This duty to investigate and prepare is, however, far from

limitless, and not every breach thereof will mean that counsel has failed to render reasonably

effective assistance. '(C)ounsel for a criminal defendant is not required to pursue every path

until it bears fruit or until all conceivable hope withers.'" *See Washington v. Watkins*, 655 F.2d

1346, 1356 (5th Cir. 1981)(citation omitted). Seigfried provides no evidence that defense counsel

did not investigate, scrutinize and review everything specified above and thereafter simply make

a strategic decision not to present certain evidence. Seigfried also fails to demonstrate that a

better investigation or the admission of the specified evidence would have changed the verdict.

This claim fails to meet the requirements of *Strickland*.

Accordingly, the supreme court's determination that defense counsel represented

Seigfried effectively was neither contrary to clearly established federal law, nor did it involve an

unreasonable application of clearly established federal law as determined by the Supreme Court

of the United States. Habeas relief will be denied for the claims asserted in Ground Twenty-One.

**M.  Ineffective Assistance of Appellate Counsel**

In Ground Twenty-Two, the import of  Seigfried's argument is that appellate counsel was

ineffective in failing to raise all of the issues that petitioner believed were meritorious. Petitioner

cites specifically to the claims in Grounds One, Two and Three of the instant petition.  In

reviewing the performance of appellate counsel, the two-pronged test of *Strickland* is likewise

applied.  *See Evitts v. Lucey*, 469 U.S. 387, 397-399 (1985). Further, the relevant Supreme Court

law for analyzing ineffective assistance of appellate counsel claims is *Jones v. Barnes*, 463 U.S.

745 (1985). In *Jones,* the court stated that appellate counsel does not have a duty to raise every "colorable" claim on appeal, suggesting that appellate counsel has broad discretion in determining which issues are more likely to be successful. *Jones*, 463 U.S. at 751-754.

On appeal, petitioner's appellate counsel raised four issues.  The record reflects that Seigfried's appellate counsel acted in accordance with *Jones*, *supra,* and raised the only issues he believed to be viable. For reasons already stated, the issues raised in the instant petition would have been just as meritless on direct appeal.

As has been demonstrated above, the allegation of ineffective assistance of appellate counsel fails to meet the deficiency prong of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct 2052, 80 L.Ed.2d 674 (1984).  However, assuming *arguendo* that Seigfried  met the first prong of *Strickland*, he has not proven the prejudice prong, which he must do in order to prevail.  As stated above, to prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. In *Strickland*, the court explained that the defendant must make a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable,"(*Strickland*, 466 U.S. at 687) and demonstrate a reasonable probability that but for counsel's errors, the results of the proceeding would have been different.  *Id*. at 694.  Further, the Fifth Circuit has held that "[a]n attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kilmer*, 167 F.3d 889, 893 (5th Cir. 1999). As such, Seigfried has not shown "but for" counsel's alleged errors the proceedings would have

been different.  Accordingly, the Court is of the opinion that there was no lapse in professional performance to meet either the deficiency prong or the prejudice prong of *Strickland*.  The state supreme court's decision was correct in finding Seigfried's claim of ineffective assistance of appellate counsel lacked merit.

Accordingly, the state supreme court's finding that Seigfried received effective assistance of counsel on appeal was neither contrary to nor an unreasonable application of clearly established federal law and as such  habeas review will be denied.

The Petitioner presents nothing in the petition sub judice to establish that the state court's adverse determination of petitioner's issues resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  *See* 28 U.S.C. §2254(d)(1); *see also Gachot v. Stalder*, 298 F.3d 414, 421 (5th Cir. 2002).

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the relief sought in the Petition of Petition of Frank Adam Seigfried, #L2329, seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254, be and is hereby **DENIED** and the instant Petition is hereby **DISMISSED WITH PREJUDICE,** and any pending motions, if any, be and are hereby **DENIED as MOOT**.

**IT IS FURTHER ORDERED AND ADJUDGED** that as all the rights and liabilities as to all the parties have been resolved that a Final Judgment be entered in this cause.

**SO ORDERED AND ADJUDGED** this the _____9th_____ day of May, 2007.


**/S/   DAN M. RUSSELL, JR.**
**UNITED STATES DISTRICT JUDGE**